Filed May 29, 1894.

---

No. 16,863.

Sparta School Township of Dearborn County, Indiana, *v.* Mendell.

School Township. — *Teacher.* — *Contract.* — *Mistake.*—*Reformation.*— A contract for the services of a teacher in the public schools of a township, which, as written and signed, appears upon its face to be between the teacher and the civil township, may, in an action thereon against the school township be reformed upon allegations of mutual mistake, and enforced against the latter corporation.

Same.—*Reformation of Contract.*—*Demand.*—Where the only relief sought is the reformation of a contract, a previous demand for a correction is essential; but where, in addition to the reformation, a recovery is asked, no prior demand is necessary.

Same.—*Township Trustee.*—*Contracts of Predecessor.*—*Presumption as to Knowledge.*—An incoming township trustee is presumed to have come into possession of knowledge of all the affairs of his school township, and he can not ignore contracts made by his township through his predecessor, upon the ground that it is defective in form.

Same.—*Character of Contract.*—*Inquiry.*—A contract between a township, by its trustee, and a teacher, for the latter's services, although on its face the contract is by the civil township, is sufficient to put a successor of the trustee upon inquiry as to the real character in which the outgoing trustee intended to, and did, contract.

Same.—*Trustee May Employ Teacher for Service Extending into Term of Successor.*—A township trustee may employ a teacher for a school term which will be in the official term of his successor in the trust.

Same.— *Teacher's Contracts.*— *Limited by Available Public Funds.*— The nature of the service, and the public interests involved, require that contracts to teach public schools shall be construed to be so limited as to correspond with the public funds available.

Sparta School Township of Dearborn County *v.* Mendell.

SAME.—*Offer of Different School.—Teacher Not Bound to Accept.*—A teacher who has contracted with a township for a certain school is not bound to accept in lieu thereof an inferior school, which by reason of a lack of attendance is likely to be discontinued by the trustee at any time.

SAME.—In an action by a teacher upon a contract to teach a particular school, an answer that a different school was offered is avoided by a reply showing that another competent teacher had been previously contracted with for the offered school.

SAME.—*Construction of Contracts of Public Officers.*—The powers of a public officer to contract being prescribed by law, his contracts are presumed to have been executed in the capacity corresponding with the official duty the officer ought to perform respecting the subject-matter in hand.

From the Dearborn Circuit Court.

*H. D. McMullen, H. R. McMullen* and *W. R. Johnston,* for appellant.

*G. M. Roberts* and *C. W. Stapp,* for appellee.

DAILEY, J.—This action was brought by the appellee, Emma Mendell, against the appellant, to recover damages for the alleged breach of a written contract for teaching school in school district No. 1, in Sparta township, Dearborn county. The contract is dated August 2, 1890, and is signed by O. M. Loyd, then the trustee of Sparta civil township, and of Sparta school township, and by the appellee as teacher. This contract purports to be, and is, upon its face, the contract of Sparta civil township, not Sparta school township. *Jackson Tp.* v. *Home Ins. Co.,* etc., 54 Ind. 184; *McLaughlin* v. *Shelby Tp.,* etc., 52 Ind. 114. It begins: "Memorandum of agreement between O. M. Loyd, township trustee of Sparta township, Dearborn county, and State of Indiana, of the first part, etc., and is signed "O. M. Loyd, township trustee." The original complaint only sought to recover damages for the alleged violation of this contract on the part of the defendant school township, but upon demurrer to certain paragraphs of the answer, the

court carried the demurrer back to the complaint, holding it to be bad. Thereupon the plaintiff was granted leave to amend, and filed her amended complaint, by which it is sought to reform the written contract, by the correction of an alleged mistake therein, and to recover upon it, as reformed, for the alleged breach of its conditions. The appellant has assigned four errors:

1. Overruling the demurrer to the complaint.

2. Sustaining the demurrer to the second, third and sixth paragraphs of answer.

3. Overruling the demurrer to the second and third paragraphs of reply.

4. Overruling the motion for a new trial.

By section 4437, R. S. 1881, Burns' Rev. 1894, section 5913, the township trustee of a civil township in this State is *ex officio* trustee of the school township. But the civil township and the school township are separate and distinct corporations. Rev. Stat. 1881, section 4437, *supra; Carmichael* v. *Lawrence*, 47 Ind. 554; *McLaughlin* v. *Shelby Tp., supra; Jackson Tp.* v. *Barnes*, 55 Ind. 136; *Greensboro Tp.* v. *Cook*, 58 Ind. 139; *Wingate* v. *Harrison School Tp.*, 59 Ind. 520; *Utica Tp.* v. *Miller*, 62 Ind. 230; *Harrison Tp.* v. *McGregor*, 67 Ind. 380.

The only power or authority of either to contract is the power conferred by statute. A school township has power to employ teachers and to make valid contracts therefor. *Jackson Tp.* v. *Barnes, supra; Greensboro Tp.* v. *Cook, supra.*

A civil township has no such power, and any such contract by a civil township is void. *Harrison Tp.* v. *McGregor, supra; Jackson Tp.* v. *Barnes, supra; Greensboro Tp.* v. *Cook, supra; Wingate* v. *Harrison School Tp., supra; Utica Tp.* v. *Miller, supra; Harrison Tp.* v. *McGregor, supra.*

A contract executed by one described therein as "trustee" of a township named, is *prima facie* the contract of the civil township. *Jackson Tp.* v. *Home Ins. Co., etc., supra.* Such is the contract in this case. As we have seen in the body of the instrument, he is described as "township trustee of Sparta township, in Dearborn county, etc.," and it is signed "O. M. Loyd, township trustee."

The only mistake alleged is, that in the contract the words "township trustee of Sparta township" were written in the commencement of the contract, instead of the words "trustee for Sparta school township." * * * and "the signature thereto by said trustee was written O. M. Loyd, township trustee," instead of "O. M. Loyd, trustee of Sparta school township." It seems from the nature of the agreement, that the writing which was intended by the parties to evidence the contract was, in legal intendment and necessary construction, binding on the school township, yet, as it, in form, is in the name of the civil township, it was necessary, before the appellee could recover, that there should be a reformation on the ground of a mutual mistake. In view of the allegations of the amended complaint, it is an erroneous assumption to say that this action was on a written contract independent of the reformation sought and awarded. As we understand it, the appellee seeks to reform and enforce a contract actually made according to the real stipulations which passed between the two contracting parties antecedent to the execution of the writing, which by their mutual mistake, inadvertence, and oversight were defectively stated in the writing. In Am. and Eng. Ency. of Law, volume 20, p. 713, it is said: "When an agreement is made and reduced to writing, but through mistake, inadvertence, or fraud, the writing fails to express correctly the contract really made, a court of equity

will reform the instrument in conformity with the real intention of the parties." In Wald's Pollock on Contracts (ed. 1885), side page 470, note S, is the following: "Where an instrument is drawn and executed, which professes, or is intended to carry into execution an agreement previously entered into, but which, by mistake of the draftsman, either as to fact or law, does not fulfill, or which violates the manifest intention of the parties to the agreement, equity will correct the mistake, so as to produce a conformity of the instrument to the agreement." In Pomeroy's Eq., volume 2, section 845, is this language:

"If, on the other hand, after making an agreement, in the process of reducing it to a written form the instrument, by means of a mistake of law, fails to express the contract which the parties actually entered into, equity will interfere with the appropriate relief, either by way of defense to its enforcement, or by cancellation, or by reformation, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact. In this instance there is no mistake as to the legal import of the contract actually made; but the mistake of law prevents the real contract from being embodied in the written instrument. In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing." The writing is not the whole and sole agreement. The stipulations between competent contracting parties constitute the contract, while the writing is only evidence of the agreement or coming together of minds.

In Wald's Pollock, etc., *supra*, side page 5, note *d*,

we quote as follows: "It is submitted, however, as to all parol contracts of common law origin (as distinguished from specialties, and some contracts originating in the custom of merchants, which have been distinguished as 'mercantile specialties,' 2 Ames Cas. Bills and Notes, 872), that when put into writing, the writing is but evidence of the contract which in legal contemplation is made orally."

The rules with reference to mutual mistakes, reformation of contracts and showing by parol the capacity in which the parties contracted, apply between corporations and individuals as well as between natural persons. That Sparta school township has the power, under section 4437, *supra*, to enter into contracts for the employment of teachers, is a plain proposition that can not be questioned. That in making such a contract the school township, and not the trustee, is the contracting party, is not open for dispute. The allegations of the complaint show that such corporation, Sparta School Township, through its agent, the trustee, made a valid contract with the appellee to teach school. This contract, so actually and really made, was not void; not *ultra vires*, against public policy, or contaminated with any infirmity whatever, and there was, therefore, no valid reason why it should not have been evidenced by a writing in due form, so executed as to effectually state its terms. So long, therefore, as the reformation sought is no more than to make the writing state the actual contract, there is no reason why it should be exempt from the general rule.

From the averments in the amended complaint, the mistake claimed is that the common agent of the two corporation principals, by mistake of both parties, substituted in the body of the writing the wrong principal;

that is, the one which had made no contract whatever, and in like manner, by such mistake in the execution of the contract, signed himself as the agent of the wrong principal instead of the principal which had made the contract.    Courts can not ignore the distinction between the actual contract and a defective and insufficient writing, which, without reformation, is no evidence of anything that was actually made or could have been made. In this case there is no effort to substitute one contracting party for another.    It proceeds upon the theory that the school township was the real contracting party with the appellee, but by mutual mistake the trustee inserted the wrong description of his principal in the body of the instrument and appended the wrong designation of his office to his signature.    This should be open to the same correction as any other part of the writing.    It is not a case where the wrong man has affixed a signature to the contract, but how he designates in the writing and in connection with his signature his official capacity.

The appellant's counsel say:    "The execution of the instrument by the trustee was the act of a public officer, and was, therefore, a mistake of law,    *    *    *    and such mistakes can not be corrected by the courts."    We think the learned counsel fail to recognize the distinction between a mistake of law, as to the legal effect of a contract correctly understood by the parties, so far as its terms and stipulations are concerned, and a legal mistake made in reducing a plain and well understood stipulation to proper form.    One is a mistake as to the effect, and the other is a mistake in carrying into execution that which in its oral form was well understood.

The evidence in this case clearly shows that O. M. Loyd, in making the contract with the appellee to teach school, was acting in the capacity of trustee of the school township.    The paper itself furnishes abundant evidence

of the mistake of the parties, as the subject-matter in mind was the teaching of a school, and the intent was to bind the school township, which such trustee alone could do.

In *Eastman, Admr.,* v. *Provident Mut. Relief Assn.,* 65 N. H. 176, it is said: "Equity requires an amendment of the writing that will make the contract what the parties supposed it was and intended it should be, although their mistake is one of law and not of fact."

We think the allegations of the complaint are sufficient to authorize the relief prayed for. *Leedy* v. *Nash,* 67 Ind. 311; *Monroe* v. *Skelton,* 36 Ind. 302.

It was proper for the appellee to show that she appeared at the school at the time stipulated, and demanded to teach. It was her duty to be on hand ready and willing to perform the conditions of the contract as she had in fact made them. But she was not bound to demand a correction or reformation of the contract before instituting suit. Where the only relief sought is the reformation, a previous demand is essential, but where, in addition to the reformation, a recovery is asked, no prior demand is necessary. *Axtel* v. *Chase,* 83 Ind. 546 (556); *Lucas* v. *Labertue,* 88 Ind. 277; Thornton and Ballard's Ann. Pr. Code, section 279.

In the application of this principle, it makes no difference that the contract in question was repudiated by the successor of O. M. Loyd who was school trustee when it was entered into. The incoming trustee can not ignore the contracts made by his township through his predecessor, upon the technicality that it was defective in form on its face. He is presumed to have come into possession and knowledge of all the affairs of his school township, and such knowledge, once obtained, continues. Trustees may come and go, but the school township goes on forever.

The paper itself was sufficient to put him upon inquiry as to the real character in which the outgoing trustee intended to and did contract. For this reason the demurrer to the third paragraph of answer setting up want of notice was properly sustained. He could not disregard the contract on the assumption that the outgoing trustee had no right to employ a teacher for a school term which would be in the official term of his successor. It has been decided otherwise. *School Town of Milford* v. *Zeigler*, 1 Ind. App. 138.

The sixth paragraph of partial answer pleads the insufficiency of funds to carry out the contract in full, but avers that there were funds to teach sixteen weeks in the school district, and school was taught for that time. The ruling on this answer does not constitute available error, because it is defective in not showing the part of the complaint to which it.is directed. The contract sued on is to be construed with reference to the funds and the time actually taught, as will be seen by examining its provisions. No more than that could be recovered under the complaint; no more was in fact obtained. The sixteen weeks set up in the partial answer would make 96 days, which, at the contract price, $1.80 per day, would be $172.80. The recovery had by the judgment was $169.20, being $3.60 less than the partial answer conceded to be recoverable. Hence the appellant was not harmed by the ruling of the court sustaining this demurrer.

The testimony of Trustee Whiteford showed that 94 days were taught in the school, which, at $1.80 per day, equals the exact amount of the judgment. The appellant was entitled to no greater reduction under the averments of the answer than the complaint itself necessarily conceded. The very nature of the service, and the public interests involved therein, require that the term of days,

weeks, or months mentioned in contracts to teach public schools should be construed to be so limited as to correspond with the public funds available.

It is next claimed that the court erred in overruling the demurrers addressed to the second and third paragraphs of reply to the fifth paragraph of answer, which, in defense to the demand for damages, alleged that the appellee was offered another school. One of these replies averred that the offer was coupled with a condition that appellant could, at its option, at any time, discontinue the proffered school for lack of school children, and upon the further condition that appellee, upon accepting the same, should release and surrender up the contract and right of action herein sued on, and waive all her rights and claims under the contract alleged in the complaint.

Appellant contends that the right to discontinue is a condition the law makes a part of every contract to teach, and that it may be exercised at any time at the discretion of the trustee, and hence the presence of such stipulation in a contract does not change its legal effect.

In our opinion this right is not an arbitrary one, and it may be abused. The presumption is that he will act judiciously and reasonably, and be controlled by the exigencies of each particular case, and that no school with an abundant attendance of children would be discontinued, while one with few children would be. This fact is what makes the value of a contract to teach that school which possesses the conditions insuring its continuance much more valuable than the contract to teach a school which affords no such assurance. Thus, the one contract is made more valuable than the other, and it can not be said that nothing is lost by the substitution of one school for another in the same township.

It will be observed that the answer to which the reply was directed, while it averred that the offered school was

as desirable and convenient, and to be of as long a term as the one mentioned in the contract sued upon, did not aver that it was possessed of those conditions as to number of children attending, which would make it of equal character in the trustee's estimation when deciding on the question of discontinuance.

The complaint avers that there was taught in the school mentioned in the contract a term of twenty-four weeks. The answer to the complaint, alleging an offer of a school which, so far as appears, was surrounded by conditions sufficient to have caused the trustee to discontinue it in a week, is not sufficient to deprive appellee of her rights under the contract upon which she seeks to recover. She was not compelled to abandon all rights under a certainty to meet the requirements of a rule that enjoins one thrown out of employment to accept other service in the same line. Such a rule is not the law and would lead to gross injustice. The condition, coupled with the offer, provided for the surrender of a valuable right. The rule requiring the acceptance of other employment, requires it to be tendered without conditions such as would be so injurious to the person as the yielding of a contract containing advantages for one with no value in it, or one stipulating for less *per diem* and liable to be put an end to at any time, as is shown by the answer. The fact that it would be taught as long as the other school appellee could not anticipate.

The third paragraph of reply averring that the trustee had already contracted in writing, with other competent teachers, to teach the offered schools, avoided the answer, because it showed that by reason of a prior contract with others the schools were already taken, and it was beyond the power of appellant to make the contract good. But, had this reply been bad, no injury resulted to appellant, because the same facts could have been proved under the

first reply, which was in general denial. The authorities all agree that contracts made by public officers or public agents, not only as to their construction, but as to the manner of signature and execution, stand upon an entirely different footing from ordinary contracts between individuals. The rights and powers of public officers to contract being prescribed by law, it is easily ascertained from the terms, purposes and subject-matter thereof, not only what the contract is, but the official capacity in which it is executed, and it is presumed to have been in that capacity corresponding with the official duty the officer ought to perform respecting the subject-matter in hand; therefore, describing himself individually in the body of the contract, or signing himself individually or with a wrong designation, is not construed as an individual contract. *Sheets* v. *Selden's Lessee*, 2 Wall. (U. S.) 177 (191); *School Town of Monticello* v. *Kendall, Admx.*, 72 Ind. 93; *Mackenzie* v. *Board, etc.*, 72 Ind. 189; *State, ex rel.*, v. *Helms*, 136 Ind. 122.

In 1 Am. and Eng Encyc. of Law, page 386, note 1, it is said: "Public agents, acting in their official capacity, may sign their own names and bind their principals."

From these authorities it seems clear that it is proper to show by parol, and from the subject-matter contracted about, the real capacity in which the public officer acted in entering into the same. Applying these principles to the case under consideration, the judgment of the court below is fully sustained on the writing and the evidence set out in the record.

A part of appellee's evidence is as follows: "It was Saturday he told me where the school was and as to pay, he said he was school trustee and was transacting school business. In signing the contract introduced in evidence, I intended to contract with the school township."

O. M. Loyd testified: ''I was acting as school trustee of Sparta school^ township at the time I made the contract.''

It would .seem, from the very fact that the contract was for the employment of a teacher, that the trustee was acting as a school trustee in executing the agreement sued on, because in no other capacity could he legally and properly act while so engaged.

The judgment is affirmed.

Filed May 29, 1894.