DAVIS v. PUBLIC SCHOOLS OF THE CITY OF ESCANABA.

1. CONTRACTS—SCHOOLS AND SCHOOL DISTRICTS—PUBLIC OFFICERS —MUNICIPAL CORPORATIONS—SUPERINTENDENT OF SCHOOLS—EMPLOYMENT.

In employing a superintendent of schools for cities incorporated under the general incorporation act (1 Comp. Laws, § 3347), the school board, acting in good faith, has power to engage such officer for a reasonable time at a reasonable salary; no limitation of authority based on the

length of terms of the members of the board is imposed by statute (1 Comp. Laws, § 3347, 2 How. Stat. [2d Ed.] § 5877), and the question of reasonableness is for the jury, to be determined from all the evidence.[1]

2. SAME—REASONABLE TIME.
    Hence it was for the jury to say whether plaintiff, in an action against a municipal school corporation for breach of a contract of employment, should be entitled to recover on testimony showing that the school board employed plaintiff as superintendent of schools of the city for a year, and a few days afterwards, immediately prior to the expiration of the terms of two members of the board, by a vote of four to two, engaged plaintiff's services for three years.

3. SAME—GOOD FAITH.
    The question of the good faith of the school board was a question of fact, and a verdict for the defendant was erroneously directed.

Error to Delta; Flannigan, J. Submitted January 28, 1913. (Docket No. 22.) Decided April 8, 1913.

Assumpsit by F. Dayton Davis against the public schools of the city of Escanaba for breach of a contract of employment. Judgment for defendant on a directed verdict; plaintiff brings error. Reversed.

*John Cummiskey* and *Michael J. Doyle (Rollin H. Person,* of counsel), for appellant.

*John Power (Newton C. Spencer,* of counsel), for appellee.

The city of Escanaba is organized under Act No. 215 of the Public Acts of 1895 (2 How. Stat. [2d Ed.] § 5868 *et seq.),* which act includes compiler's sections 3338 to 3357 [1 Comp. Laws], section 3347 providing for the employment of a superintendent of schools and teachers. The plaintiff became superin-

---

[1] The authorities on the power of a board to appoint superintendents or teachers for terms extending beyond its own term are considered in a note in 29 L. R. A. (N. S.) 657.

tendent of the public schools of the city at the beginning of the school year 1904, and was superintendent until July 1, 1910. His first contract with the city was one for two years, and this, at the end of the first year, was extended to a three years' contract. In 1907 he was re-employed for three years. In April, 1910, the parties entered into a new contract for one year, to take effect from the expiration of the then existing contract. On July 5, 1910, the new one-year contract having been in operation five days, the defendant passed the following resolution, at a special meeting of the board, at which all the members, six in number, were present, four of them voting for and two against the resolution:

"Resolved, that F. Dayton Davis be, and he is hereby engaged and hired as superintendent of the public schools of the city of Escanaba, for a period of three (3) years, beginning July 1st, A. D. 1910, at a salary of twenty-seven hundred ($2,700.00) dollars per year, payable monthly; and that the president and secretary of the board be, and they are hereby authorized to make and execute a contract, in behalf of this board, and in accordance herewith, upon the proper release and surrender by the said F. Dayton Davis of the contract which he now holds with this board."

The three-year contract contemplated by this resolution was duly executed on the following day, and is the contract declared upon in this suit. When the resolution last above referred to was passed, and when the contract in question was executed, the members of the board of education were Matthews and Reade, whose terms expired in July, 1910, Bartley and O'Meara, whose terms expired in 1911, and McRae and Groos, whose terms expired in 1912. The annual school meeting of the district was held July 11, 1910, at which time two new members of the board of education were elected in place of Mr. Matthews and Mr. Reade. One of the retiring members voted for, and

the other against, the resolution employing the plaintiff.

The board organized for the ensuing year on the 12th of July, 1910, by the election of a president, secretary, and treasurer. There was some discussion of the matter of retaining the plaintiff as superintendent. A majority of the board was opposed to his remaining, and he was asked to resign. He declined to do so. On the contrary, under date July 15, 1910, plaintiff sent a written communication to the board, tendering his services under the contract of July 6th. In reply, and in writing, the board informed him, July 21, 1910, that his services as superintendent were at an end, and directed him to deliver up to the secretary of the board the school property in his possession. Plaintiff remained ready and willing to perform his contract, although it appears that he sought employment elsewhere, and at the end of five months brought this action for his salary to that date.

With its plea the defendant gave notice (1) that the plaintiff was not entitled to recover because the contract was entered into by the concurrent act of four members of the board of education without authority of law, was *ultra vires* and void, having been made to cover a time greater than the time of the life of the board, and that it was unreasonable and unlawful; (2) that the meeting at which the contract was directed to be made was a special meeting, held without notice, or without valid notice; (3) that the contract was void and invalid because entered into by the members of the board for an unlawful purpose, that is to say, to forestall any action that might be taken by the incoming board of education, to be elected one week from the date of the said contract; that the board of education in their action were not influenced by lawful considerations of official duty, but acted under the spur and impulse of partisan feeling to secure the continued services of the plaintiff for an ex-

tended term, whether such action was favored by the people and the patrons of the schools or by the incoming board or not; (4) that the motives of the members of the board in voting in the affirmative on said resolution were unlawful, not influenced by official integrity or considerations of the public good or the good of the schools, but and to the knowledge and with the concurrence of the plaintiff were for partisan ends; (5) that the plaintiff was already under contract with the defendant, that no exigency whatever had arisen for the execution of the new alleged contract for three years; (7) that the defendant was justified in its action in dispensing with the services of the plaintiff because the public good and interest of the public schools demanded it, and in this connection it is set out that plaintiff's work was imperfect and inefficient; that conditions had grown up under his management which gave much dissatisfaction and discontent; that students graduating from the high school attempting to go to higher institutions of learning in the State had been in many instances found deficient in the acquirements usually obtained at a high school; that this condition was manifested in the case of the class which graduated in 1908, when of six students who applied for admission to the University of Michigan four failed in the preliminary test. Other actions of the plaintiff as superintendent are criticised in the notice of special defenses. Finally, it is said, in justification of the action of defendant, that plaintiff agreed to the action taken by the board on the 12th of July, 1910, saying in response to an inquiry addressed to him by one member of the board, "I don't want to stay in Escanaba, if this board does not want me to," and that, while the matter of dispensing with his services was under discussion, he said:

"I wish to act entirely in harmony and wish to stay

as long as you will have me; and wish to leave here with a good reputation; and will stand by whatever the wishes of this board are, and will not stand for any legal proceedings, and wish to ascertain your wishes as soon as you are ready, and will abide by them."

Upon the trial both plaintiff and defendant moved for a peremptory instruction to the jury, agreeing that the question presented was one of law. The court was of opinion that there was no evidence tending to show the existence of any fraud, collusion, or bad faith on the part of any member of the board nor any bad faith or collusion on the part of the plaintiff; that the validity of the contract must depend upon whether the board had power to conclude a contract for plaintiff's services to extend beyond the official life of all the members of the board. Being of the opinion that the board had no such power, a verdict was directed accordingly and judgment was entered on the verdict.

The reasoning of the trial court is expressed in the following language:

"Except where the situation and circumstances carry an element of necessity, an element not present in this case, the trustees are without power to tie up the hands of the people in the important matter of the personnel of their superintendent and teachers beyond the time during which the affairs of the school are committed to them. Such a limitation of the power of the trustees may perhaps be inferable from our school statute; but, however that may be, many reasons exist why the contract would be contrary to public policy. It might be desirable on occasions to enter into a long-term contract with a superintendent; when in an effort to get a very desirable man, the board might find itself confronted with that very condition. But because on an exceptional occasion a board meets with such condition that is no reason for saying that the power does or even should exist. In school affairs, gentlemen, it is better to lose the services of an exceptionally good superintendent for

a term of three years than that the school should be shouldered with an incompetent and exceptionally poor superintendent for a year or a month or any length of time; the advantage of being able on an exceptional occasion to obtain the services of an exceptionally good man is more than offset by the disadvantage, which our common experience in school matters teach us would result from a long-term employment of an undesirable, not to say incompetent, man. Any public policy requires that the children be not put at disadvantage by a careless or culpable school board, at least beyond the time when the members of such board are charged with the school administration, without right in the parents of such children to act through their newly appointed agent to correct that condition. The court does not hold that the board of education is limited to contract for one year. A majority of the board having absolute control of the affairs of the school for a longer period might contract for the length of their official life, because during that period the people, through the election of new agents, would be powerless to disturb the *statu quo*. But the court does hold that it would not have the right to contract for a term of three years. If this contract had been for two years, instead of three, a different question would have been presented."

Defendant contends, broadly, that the contract is opposed to the policy of the constitution and laws of this State, and asserts that, whatever the opinion of the court may be respecting the general proposition, the particular contract was made under such circumstances that it is a fraud in law, and opposed to public policy on that ground.

Ostrander, J. *(after stating the facts)*. The question is whether a correct rule was stated and applied by the trial court. It has been presented in other jurisdictions. In some, decision has turned upon some provision or the construction of a statute, in others the rule applied by the trial court is announced; while in still others a contrary rule is followed. Among the cases which have been examined are *City of*

*Denver* v. *Hubbard,* 17 Colo. App. 346 (68 Pac. 993) ;
*Reubelt* v. *School Town of Noblesville,* 106 Ind. 478
(7 N. E. 206) ; *Board of Commissioners of Jay County*
v. *Taylor,* 123 Ind. 148 (23 N. E. 752, 7 L. R. A. 160) ;
*Board of Commissioners of Pulaski County* v. *Shields,*
130 Ind. 6 (29 N. E. 385) ; *Wait* v. *Ray,* 67 N. Y. 36;
*Moon* v. *School City of South Bend* (Ind. App.), 98
N. E. 153; *Smith* v. *School District No. 57,* 1 Penne-
will (Del.), 401 (42 Atl. 368) ; *Fitch* v. *Smith,* 57 N. J.
Law, 526 (34 Atl. 1058) ; *Wilson* v. *East Bridgeport
School District,* 36 Conn. 280; *Burkhead* v. *Inde-
pendent School District of Independence,* 107 Iowa,
29 (77 N. W. 491) ; *Stevenson* v. *School Directors of
District No. 1,* 87 Ill. 255; *Davis* v. *School Directors,*
92 Ill. 293; *Millikin* v. *County of Edgar,* 142 Ill. 528
(32 N. E. 493, 18 L. R. A. 447) ; *Chittenden* v. *School
District,* 56 Vt. 551; *Hemingway* v. *Joint School Dis-
trict,* 118 Wis. 294 (95 N. W. 116) ; *School District in
Natick* v. *Morse,* 8 Cush. (Mass.) 191; *Sparta School
Township* v. *Mendell,* 138 Ind. 188 (37 N. E. 604).
Not all of these cases relate to schools, or school dis-
tricts or affairs; but, excepting the Colorado decision,
they all involve the power of boards or officers rep-
resenting municipal or quasi municipal corporations
to make contracts for the services of others for periods
beginning or extending beyond the official lives of
such boards or officers, or of some of them.

The statute of Michigan, heretofore referred to,
makes each city incorporated under it a school dis-
trict and body corporate with the usual powers of
corporations organized for public purposes, expressly
giving the right to sue and be sued, to acquire, hold,
and dispose of real and personal property. The
board of education is made to consist of six trustees,
each elected for a term of three years, at a regular
annual election held on the second Monday in July
in each year. At the first regular meeting after each
annual election the board is required to organize by

electing from its members a president, and by electing a secretary who may or may not be a member of the board.  This board has control and management of the property interests and affairs of the district, and is directed to establish such primary and graded schools as the public interests may require, and, if deemed expedient, to establish a high school. It is provided that:

"The board of education shall appoint and employ a superintendent, and the teachers and instructors for the public schools, and determine their salaries and define their duties.  They shall prescribe the courses of study to be pursued, the books to be used, classify the pupils as may be expedient, and provide the necessary apparatus and facilities for instruction, * * * determine the length of time the schools shall be taught each year, adopt rules for the regulation and government of the schools, and do whatever may be required to advance the interests of education."

These are some of the powers bestowed out of many, among which others is the power to designate and establish sites for schoolhouses, purchase and procure land therefor, and erect and maintain schoolhouses and buildings for use of the public schools, with proper furniture and appurtenances for buildings and grounds.

In some of the States, with respect to district schools, it is the right and duty of the taxpayers of the district, at the annual meeting, to determine how long school shall be taught during the current year, what studies shall be pursued, and whether a male or a female teacher shall be employed. This right so reserved to the taxpayers is in a number of the cases above referred to the ground upon which the court denies to trustees, or to a trustee, elected annually, the power to engage a teacher for the ensuing, or succeeding, year.  In Wisconsin *(Webster* v. *School District,* 16 Wis. 316; *Hemingway* v. *Joint School Dis-*

175 MICH.—8.

*trict, supra)*, the rule stated is that the power of the board to contract is general, in the absence of an inconsistent determination of the voters at the last annual meeting and subject to their power at the next (or of the new board) to determine with respect to the length of time a school shall be taught, whether by male or female teachers, or both, and the application of the school moneys. In Illinois *(Stevenson v. School Directors of District No. 1, supra)* it was held that in respect to district schools the power of directors to employ teachers is limited to the current year. Reasons for the conclusions were found in a construction of the statute which, as in Wisconsin, reserved to the taxpayers of the district the right to determine at the annual election what branches of learning should be taught in the schools. The court uses this language:

> "There is, doubtless, no objection to contracts for the teaching of terms extending for a reasonable time beyond the current school year, when such contracts are entered into in good faith, and not for the purpose, merely, of forcing upon the district an unsatisfactory teacher or defeating the will of the voters at the annual election."

See, also, *Davis* v. *School Directors, supra*, and *Millikin* v. *County of Edgar, supra*. In the *Millikin Case* the doctrine of the earlier cases is applied in considering the validity of a contract made by a board of supervisors with a person engaged as keeper of a county poor farm for a term of three years. It is pointed out that the term of office of a supervisor is one year, the board is clothed with power to levy taxes to raise funds to support paupers, a power to be exercised annually, and, in view of these considerations, it would be an unreasonable construction of the statute to hold that the legislature, although it had imposed no limit upon the time for which a keeper of the poorhouse might be appointed, intended

to clothe the board with authority to enter into a contract to run for a period of three years. The rather stereotyped argument is employed that, if the board has authority to enter into a contract for three years, no reason could be perceived for denying the validity of a contract for ten years, and, if so long a contract could be made, hands of succeeding boards would be bound and their powers taken from them. The Illinois decisions are referred to with approval in *Chittenden* v. *Waterbury, supra.*

It cannot be said that any general doctrine of the law of contracts or of municipal corporations is announced or is applied in decisions which rest primarily upon the meaning and effect of a statute or of statutes. If in terms a power is in one part of a statute given without words of limitation, but in another part of the statute is limited expressly, or by necessary implication, it is limited, and by the statute. The reasons which affected the conclusions of the Illinois court, reasons based upon the provisions of the statute itself, were urged in this court in a case involving a contract made for teaching a graded school. The validity of the reasons was denied because the statute provisions relied upon did not relate to graded schools. In other words, the asserted limitation of a power, conferred generally, was not found in other portions of the act, and was therefore denied. *Tappan* v. *School District,* 44 Mich. 500 (7 N. W. 73). See, also, *Cleveland* v. *Amy,* 88 Mich. 374 (50 N. W. 293); *Farrell* v. *School District,* 98 Mich. 43 (56 N. W. 1053).

The power to employ a superintendent for the Escanaba schools is a general power, conferred in general terms. The general grant found in the statute is not in some other part thereof limited, expressly or by necessary implication. It is said for defendant that nevertheless the court should find and declare that public policy fixes a limitation upon the

exercise of the power, a limitation which the court may, and should, state in the form of a rule applicable to all like cases. "Appellant's counsel argue," it is said in the brief for defendant—

" 'That a contract made by a board of education is valid.' Defendant's counsel presents the same proposition, and thus far they are in accord. Appellant's counsel then place a limitation upon the power of the board which is 'if made for a reasonable time.' Defendant's counsel likewise places a limit to the board's power, which is 'if made for a term within the official life of a majority of the board.' Now is it not perfectly apparent that the quality of these lines of reasoning is exactly the same, and that the only difference is quantitative? Upon the proposition that these contracts are valid we are agreed. Upon the further proposition that the board is limited in its power to make them, we are also agreed. The difference between us is upon the quantity of such limitation, and only upon that.

"Appellant's counsel urge the adoption of a rule respecting such quantity which is indefinite, vague, and uncertain. Under such a rule, no lawyer would be able to advise a man or board whether a particular contract was valid or not. It would first have to be adjudicated and such adjudication would add but little certainty to the law governing such contracts; successive adjudications would be necessary, until the court reached such a time as would give the word 'reasonable' definition and certainty. When such time limit had finally been reached, the court would have 'legislated' into its decision just the thing which counsel for appellant argues it has no right to do, namely, the making of such time limit definite and certain. Is not such a result inevitable, and is it not as much of an assumption of legislative power on the part of the court to declare a contract for ten years void as to say that one made for a greater period than the official life of a majority of the members of the board is invalid? And upon what ground does the rule that the limit of these contracts is for a reasonable time rest for its justification? Is it not palpable that such justification can be found only in considera-

tions of public policy?   Where do we find any such
limitation placed by the legislature?   We submit that
it is to be found nowhere in the statutes.

"Counsel argues that to make such limitation at
once specific would amount to judicial legislation, but
can they deny that the limitation which they concede
amounts to the same identical thing, except that it
contains the objectionable feature of uncertainty,
which objectionable feature is to be eliminated by the
courts only by a multiplication of lawsuits, which but
lead to a result of certainty so insistently objected to
by appellant's counsel?   The recognition of any time
limit to the power of the board to make these con-
tracts is but a concession of the right of the voters at
some time to control the subject-matter of such con-
tracts.   *   *   *   Defendant's counsel insist that the
limitation of the board's power should be given pre-
cision and certainty, and that the exercise of the right
of the voters should not be denied for any time what-
ever after it accrues.   That is the only difference be-
tween us upon this question.   The reason for either
limitation is obviously the same, and the desirability
of certainty in the law should leave no question as to
which is the better rule.   The voters can change the
personnel of a majority of the board of education in
any two successive years, and it is nothing to the pur-
pose to argue that it might be done in one year.   It
cannot necessarily be done in that time."

The difference between counsel is more funda-
mental than this statement indicates that it is.   There
are many contracts and many acts, official and other,
which are enforceable at law and receive judicial
recognition only if they are reasonable.   To say that
a contract is valid if reasonable is not to apply an
indefinite and uncertain legal test.   The facts in each
case having been determined, the test is as definite
and certain as any applied in the administration of
the law.   By this I mean that the rule of law cer-
tainly and definitely holds a contract good or bad as
its reasonableness or its unreasonableness is deter-
mined.   But beyond this the rule contended for by
appellee and applied by the court ought to rest upon

some sufficient reason. Certainty and universality of application of a rule are desirable but do not, after all, furnish reasons for the rule itself. The legislature has made the board of education a continuing body, and has confided to it the matter of selecting and employing a superintendent of schools. Why should the court say that the power of the board in this behalf does not extend so far as to permit it to hire a superintendent for more than two years? The court cannot extend or diminish the legislative grant of power; what it may do, in a particular case, is to determine whether the action of the board which is questioned is within the power conferred.

I am of opinion that the limits, and only limits, to the exercise of the power of the board to employ a superintendent of schools are those fixed by reasonableness and good faith. The board of education does not derive its powers from the district but from the statute. That courts or juries might differ concerning the effect of particular action, as indicating good faith or the contrary, is no reason for refusing the rule. If the board should make a contract for the services of a superintendent for 50 years, or for a year at a salary of $50,000, a court, without the intervention of a jury, would promptly set the contract aside as fraudulent. In cases like the one at bar, the question of good faith is one for a jury, which should be instructed that in considering the question all facts bearing upon the propriety and reasonableness of the contract, as well as the actual motives and purposes of the board, may be considered. If a district had never paid more than $3,000 salary to a superintendent, a contract calling for $6,000 salary might be found to be so unreasonable as to be fraudulent. So, if the size and needs of the district reasonably demanded a schoolhouse costing not more than $10,000, a contract to build a schoolhouse costing $50,000 would be open to the charge that it was unreasonable,

and legally fraudulent, no matter what optimistic and utopian reasons the board might entertain about the matter.

The power and the exercise of it are assumed with reference to, and restricted by, the purposes for which it is conferred and the reasonable necessity for its exercise. Within reason and in good faith the powers conferred by the legislature upon the board should be exercised by the board. There is nothing novel in this doctrine. *Moon* v. *School City of South Bend, supra; Wilson* v. *East Bridgeport School District, supra; Burkhead* v. *Independent School District of Independence, supra; City of Denver* v. *Hubbard, supra.*

The judgment is reversed. Inasmuch as the admitted facts respecting the making of the contract in suit are such that an inquiry into the good faith of the parties is suggested thereby, a new trial is granted.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, STONE, and BIRD, JJ., concurred.