NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0330n.06

Case No. 23-1365

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| THOMAS D. ESORDI, | ) | |
| Plaintiff-Appellant, | ) ) | **FILED** Jul 29, 2024 KELLY L. STEPHENS, Clerk |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| MACOMB TOWNSHIP, MICHIGAN, a Michigan Municipal Corporation; JANET I. DUNN and KRISTI L. POZZI, in their individual and official capacities, | ) ) ) ) ) | OPINION |
| Defendants-Appellees. | ) | |

Before: GILMAN, GRIFFIN, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Thomas Esordi worked for Macomb Township as its general counsel and human resources director. After the Township's Board terminated his employment, Esordi sued the Township and two of the Board's officers, arguing that the termination violated his Fourteenth Amendment due-process rights because he was terminated without notice and an opportunity to be heard. The district court granted summary judgment to Defendants. Finding no error, we affirm.

## I.

In January 2017, Esordi and Macomb Township entered into an employment agreement providing that Esordi would serve as general counsel and human resources director for the Township. And the Township's Board of Trustees approved the employment agreement.

As relevant here, the agreement states that "all disciplinary action or discharge shall be for just cause and that disciplinary action shall be progressive except where Employee's misconduct warrants immediate discharge." R. 111-4, PageID 2274. Additionally, the agreement states that Esordi's "performance and compensation will be reviewed by the Board or an appointed committee of the Board on an annual basis." *Id.* at 2273. The agreement did not have a specified termination date.

When Esordi was hired, the Board consisted of Defendant Janet I. Dunn as supervisor; Defendant Kristi L. Pozzi as clerk; Karen Goodhue as treasurer; and Dino F. Bucci, Jr., Timothy F. Bussineau, Roger Krzeminski, and Nancy Nevers as trustees. The Board's composition changed after 2017. Bucci resigned on November 13, 2018, due to legal problems, and Kathy Smith replaced him. Krzeminski passed away on December 18, 2019, and Charlie Oliver replaced him.

In January 2020, several department heads completed evaluations regarding Esordi's dual role and his performance. Eventually, the evaluations were sent to attorney Dean Yeotis, who authored a report analyzing the evaluations. On February 19, 2020, the Board voted to terminate Esordi's employment, and on April 29, 2020, the Board conducted a *Loudermill*[1] hearing to determine if "just cause" existed to terminate Esordi's employment under the agreement. After the hearing, the Board deadlocked on the vote to terminate Esordi. As a result, Esordi returned to work for the Township on May 11, 2020.

On November 3, 2020, new trustees were elected to the Board: Frank J. Viviano as supervisor, Kristi L. Pozzi as clerk; Leon Drolet as treasurer; and Frank A. Cusamano, Jr., Nancy Nevers, Peter Lucido, III, and Charlie Oliver as trustees. Viviano proposed the elimination of the dual position held by Esordi, which the Board approved and adopted at a public meeting.

---

[1] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

On November 25, 2020, Esordi was advised that the Board voted to eliminate his position and that his services were no longer needed. The Board did not conduct a new *Loudermill* hearing.

In April 2020, Esordi sued the Township, Dunn, and Pozzi in state court, initially asserting only state-law claims. On March 1, 2021, Esordi amended his complaint to add a federal claim alleging that Defendants denied him due process, in violation of 42 U.S.C. § 1983. Defendants removed the case to the United States District Court for the Eastern District of Michigan. The district court declined to exercise supplemental jurisdiction over Esordi's state-law claims and remanded those claims accordingly.

Regarding the remaining due-process claim, Defendants each moved for summary judgment. The district court denied the motions without prejudice after it amended the scheduling order to reopen discovery. After completing discovery, Defendants again moved for summary judgment. This time, the district court granted all three motions.

This timely appeal followed.

## II.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. *Capen v. Saginaw County*, 103 F.4th 457, 461–62 (6th Cir. 2024). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

Esordi contends that the Township violated his due-process rights by terminating his employment contract without providing him with a hearing. Esordi's procedural-due-process

claim against the Township hinges on his ability to show that he has a protected property interest in continued employment with the Township.

The Fourteenth Amendment's Due Process Clause bars States from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). A procedural-due-process claim requires proof of the following two elements: "(i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023).

We generally engage in a two-step process in analyzing a procedural-due-process claim. First, we determine if the plaintiff has a protected property interest and, second, we consider "what procedures are required to protect that interest." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004) (citation omitted); *see also Kaplan v. Univ. of Louisville*, 10 F.4th 569, 577 (6th Cir. 2021). Here, we need not go beyond the first step because Esordi does not have a protected property interest.

The U.S. Constitution does not create or define property interests. *Loudermill*, 470 U.S. at 538. Instead, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). We have held that "[a] property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances." *Hasanaj v. Detroit Pub. Schs. Cmty. Dist.*, 35 F.4th 437, 447 (6th Cir. 2022) (quoting *Singfield*, 389 F.3d at 565). "Although the underlying substantive interest is created by 'an independent

source such as state law,' *federal constitutional law* determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Id.* (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005)).

Esordi argues that he has a property interest in continued employment with the Township through his employment contract and through an implied contract. We address each argument below.

### A. Employment Agreement

Esordi's employment agreement with the Township provides that the Township needed just cause to terminate his employment. "It is true that government employees have a cognizable property interest in their job if they . . . are only removable for cause, or it can be legitimately implied that they have such status." *Id.* at 448 (citing *Loudermill*, 470 U.S. at 538–39). But the problem Esordi faces in relying on the employment agreement is that the agreement violates Michigan public policy. And under Michigan law, "[c]ontracts contrary to public policy . . . are illegal and void." *Federoff v. Ewing*, 192 N.W.2d 242, 246 (Mich. 1971) (per curiam) (quotation omitted).

How do we determine whether a contract violates Michigan public policy? The Michigan Supreme Court tells us that we must look to "the policies that . . . have been adopted by the public through [Michigan's] various legal processes, and are reflected in [the Michigan] and federal constitutions, [Michigan] statutes, and the common law." *Terrien v. Zwit*, 648 N.W.2d 602, 608 (Mich. 2002); *see also Skutts v. City of Grand Rapids*, 266 N.W. 344, 346 (Mich. 1936) ("The public policy of the government is to be found in its statutes, and . . . then in the decisions of the courts." (quotation omitted)). Esordi's employment agreement runs afoul of Michigan statutory law and caselaw.

Start with the statutory law. Michigan law allows a township board to hire an attorney:

> The township board of a township may employ an attorney to represent the township in civil matters and in the prosecution of violations of township ordinances. The attorney shall receive the compensation determined by the township board. In prosecution of a violation of a township ordinance, the township attorney shall countersign the certificates of jurors and witnesses.

Mich. Comp. Laws § 41.187. And the township board can terminate employees at will:

> The township board may employ a township manager and *other employees* as are necessary. *They shall serve at the pleasure of the township board* and shall perform duties lawfully directed by the township board, except those duties that are delegated by law to another township official, unless consent has been granted.

*Id.* § 41.75a (emphasis added). Reading these two provisions together, the Township has authority to hire an attorney, but that attorney, like all other employees, serves at the Township's pleasure. The Township "simply had no authority to grant indefinite 'just cause' tenure to an employee, who, by statute, serves 'at the pleasure of the board.'" *Fecho v. Twp. of Grosse Ile*, 956 F.2d 269, at \*2 (6th Cir. 1992) (per curiam) (unpublished table decision) (quoting Mich. Comp. Laws § 41.75a). Esordi's employment agreement is therefore void because it conflicts with § 41.75a.

Esordi pushes back on this conclusion. He argues that § 41.75a cannot be reconciled with § 41.187. That is because, according to Esordi, § 41.187 allows a township board to hire an attorney and makes no mention of the attorney serving at the pleasure of the board. We see no inconsistency between the two provisions. The mere fact that Michigan law allows a township board to hire an attorney does not exempt that attorney from § 41.75a, which allows a township board to terminate any employee at will. Another issue for Esordi is that he held multiple titles for the Township—attorney and human resources director. Esordi points to no statutory authority that would exempt his human resources position from § 41.75a.

Next, consider Michigan caselaw. In *City of Hazel Park v. Potter*, the Michigan Court of Appeals confronted the circumstances under which a legislative body can bind a future legislative body to a contract. 426 N.W.2d 789 (Mich. Ct. App. 1988). The *Potter* court explained that "whether an outgoing city council may enter into an employment contract which would bind a future city council is one of first impression in Michigan." *Id.* at 792. In that case, the defendant was a city manager under an employment contract that would restrict the incoming city council from terminating his employment without "just cause." *Id.* at 790. The City sued, claiming that the contract violated its charter by "improperly infring[ing] upon the incoming council's right to appoint a city manager pursuant to the city charter," which stated that the city manager "shall hold office at the pleasure of the Council." *Id.* at 791.

For guidance, the *Potter* court reviewed the majority and minority views in other jurisdictions, noting "a clear distinction in the judicial decisions between governmental and business or proprietary powers." *Id.* at 792 (quotation omitted). The court ultimately adopted the majority rule that "the appointment and removal of public officers is a governmental function, and a municipal council cannot engage a public officer by contract for a term extending beyond that of its own members, so as to impair the right of their successors to remove such officer and to appoint another in his place." *Id.* (quotation omitted, emphasis removed). Indeed, "independent of statute or charter provisions, the hands of successors cannot be tied by contracts relating to governmental matters." *Id.* (quotation omitted); *see also* 10 Eugene McQuillin, The Law of Municipal Corporations § 29:103 (3d ed. 2023). As such, the contract at issue there was void because it "deprive[d] the incoming council of its power to select and appoint a city manager as provided in the city charter." *Potter*, 426 N.W.2d at 793. Additionally, the court held that the contract was

"void on the basis of public policy grounds since it [took] away the governmental or legislative power of the incoming council to appoint and remove public officers." *Id.*

Esordi's employment agreement violated public policy under *Potter*'s reasoning because, by limiting the Township's ability to terminate Esordi except for good cause, the agreement effectively tied future boards to employing Esordi.

Esordi does not dispute *Potter*'s rationale. Instead, Esordi contends that *Potter* conflicts with a prior decision of the Michigan Supreme Court—*Davis v. Public Schools of City of Escanaba*, 140 N.W. 1001 (Mich. 1913). *Davis* involved a school district's power to hire superintendents and teachers. 140 N.W. at 1001. There, the plaintiff, who was the superintendent of the city's public schools, signed a three-year contract and sued the school district after its newly constituted board terminated his employment. *Id.* The school district argued that the contract was unlawful because it was "made to cover a time greater than the time of the life of the board[.]" *Id.* at 1002. The trial court ruled in the school district's favor, finding that it did not have the power to enter into a contract that would extend the plaintiff's services beyond the "life of the board." *Id.* The Michigan Supreme Court reversed based on the relevant statute, holding that "[t]he power to employ a superintendent for the Escanaba schools [was] a general power, conferred in general terms. The general grant found in the statute [was] not in some other part thereof limited, expressly or by necessary implication." *Id.* at 1005. Therefore, the "only limits[] to the exercise of the power of the board to employ a superintendent of schools are those fixed by reasonableness and good faith. The board of education . . . derive[s] its powers . . . from the statute." *Id.* at 1006.

Esordi urges us to look only at whether the employment agreement was reasonable and entered into in good faith, in line with *Davis*. But *Davis* engaged in that analysis only *after* determining that the statute at issue did not provide any limitations. *Id.* at 1005–06.

Although Esordi argues that *Davis* stands for the proposition that a contract may extend beyond the life of the current township board, the *Davis* court explicitly declined to create such a general rule because "[t]he court cannot extend or diminish the legislative grant of power; what it may do, in a particular case, is to determine whether the action of the board which is questioned is within the power conferred." *Id.* at 1006. In *Davis*, the power to bind a future board through an employment contract was within the power conferred. *Id.* Here, however, the employment agreement was not. Thus, even under *Davis*, the employment agreement was unlawful.

Beyond arguing that *Davis* supersedes *Potter*, Esordi contends that *Potter* does not apply because he is not a "public officer" as that term is defined in Michigan Compiled Laws § 41.1b. True, § 41.1b references only four "officers": supervisor, treasurer, clerk, and trustee. But the general rule announced in *Potter* is not so limited: "it is generally held that, independent of statute or charter provisions, the hands of successors cannot be tied by contracts relating to governmental matters." *Potter*, 426 N.W.2d at 792 (quotation omitted). And although Esordi argues that his employment with the Township was not a governmental matter, under Michigan law, "it is settled that the hiring, supervision, discipline and discharge of a government employee is the exercise of a governmental function." *McCarthy v. Brownstown Twp.*, No. 289651, 2010 WL 1568475, at *4 (Mich. Ct. App. Apr. 20, 2010) (per curiam) (citations omitted).

### B.    Implied Contract

Esordi claims that he had an implied contract that created a property interest. Specifically, he claims that a contract was implied by the Board's decision to hold a *Loudermill* hearing in April 2020 and the fact that Esordi was subjected to progressive discipline via written reprimand. Those actions, however, were insufficient to create an implied contract between Esordi and the Township. The Township "was not authorized to enter into any contract in contravention of its charter"

because, "under Michigan law, a municipality cannot exceed its charter powers." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989) (citing *Niles v. Mich. Gas & Elec. Co.*, 262 N.W. 900 (Mich. 1935)); *see also Hasanaj*, 35 F.4th at 448 ("[A] public employee cannot claim an implied contract where it violates the controlling body's statutory authority." (alteration in original) (quoting *Thorin v. Bloomfield Hills Bd. of Educ.*, 513 N.W.2d 230, 235 (Mich. Ct. App. 1994))).

An implied contract requiring the Township to employ Esordi until just cause supported his termination would have violated Michigan Compiled Laws § 41.75a. Therefore, Esordi has not shown that he has a protected property interest on this ground.

\* \* \*

In sum, because Esordi's employment agreement was void under Michigan law and because Esordi could not create a lawful implied contract with the Township, Esordi has failed to show that he had a property interest in his employment.[2] Therefore, his procedural-due-process claim against the Township fails as a matter of law.

## IV.

Next, Esordi claims that Defendants Dunn and Pozzi violated his procedural-due-process rights by participating in the decision to terminate his employment. As we discussed above, Esordi did not have a property interest in continued employment with the Township. Therefore, his due-process claims against Dunn and Pozzi fail.

## V.

For the foregoing reasons, we **AFFIRM** the district court's judgment.

---

[2] We do not, and need not, consider whether other kinds of contracts not at issue here involving employment terms and conditions with municipal entities are void under Michigan law.