*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS D. ESORDI,

Plaintiff-Appellant,

v

TOWNSHIP OF MACOMB, JANET I. DUNN, and
KRISTI L. POZZI,

Defendants-Appellees.

FOR PUBLICATION
August 29, 2025
10:36 AM

No. 366541
Macomb Circuit Court
LC No. 2020-001432-CD

Before: GADOLA, C.J., and RICK and YATES, JJ.

GADOLA, C.J.

Plaintiff, Thomas D. Esordi, appeals as of right the trial court's opinion and order granting summary disposition of plaintiff's claims under the Whistleblowers' Protection Act (WPA), MCL 15.369 *et seq*., in favor of defendants, Township of Macomb, Janet I. Dunn, and Kristi L. Pozzi. Plaintiff also appeals the trial court's previous order granting defendants summary disposition of plaintiff's breach-of-contract and public policy-based retaliation claims. We affirm.

## I. FACTS

Plaintiff is an attorney who began working as outside counsel for the Township of Macomb (the Township) in 2011. In January 2017, plaintiff was hired by the Township as a full-time employee in a newly-created dual position of general counsel and human resources (HR) director. Plaintiff was supervised by the township supervisor, Janet Dunn. Plaintiff's employment agreement provided that "all disciplinary action or discharge shall be for just cause." The contract had no term of employment.

Plaintiff's contract was approved by a majority vote of the Board, and plaintiff began his full-time employment. At the time, the Township Board consisted of: Dunn as supervisor; Kristi Pozzi as clerk; Karen Goodhue as treasurer; and Dino Bucci, Timothy Bussineau, Roger Krzeminski, and Nancy Nevers as trustees. In November 2017, plaintiff responded to a grand jury subpoena issued to the Township regarding payment for the paving of a parking lot. The same month, trustee Dino Bucci was indicted on several federal theft and bribery charges, and resigned from the Board.

-1-

In May 2018, Jim Gillis, the local American Federation of State, County, and Municipal Employees (AFSCME) union chair, drafted a memorandum expressing concerns that plaintiff's dual role of general counsel/HR director was not in the union's best interests. In April 2019, then-township planner Patrick Meagher drafted a letter of resignation, indicating there was a "distinct disconnect" between township department heads and plaintiff, and that the dual position created a conflict. The same month, a township HR employee filed a grievance claiming plaintiff subjected her to a hostile work environment. In May 2019, over 20 department heads signed a memorandum indicating that plaintiff's dual role created a negative work environment and requested the positions of HR director and general counsel be separated.

In October 2019, being concerned with the possible creation of a new ethics ordinance and ethics board, Dunn told plaintiff that in 2016 she met Bucci at a restaurant and he gave her an envelope of money and said to Dunn, "The developers want you to have this." Dunn estimated this was around the time of Bucci's federal indictment. Dunn told plaintiff that she did not know how much money was in the envelope, and that she had given the money to various people who needed money and to her church. Plaintiff testified that in the same conversation with Dunn, Dunn told plaintiff she believed other township employees knew Bucci had given her the envelope, and that they had used this information against her. Plaintiff reported this information to the Department of Justice (DOJ) the day after his conversation with Dunn.

Although directed by the Board in May 2019 to evaluate plaintiff's job performance, it was not until January 10, 2020, that Dunn e-mailed certain township employees to complete anonymous evaluations of plaintiff and return them to a physical drop box by January 17, 2020. Dunn, Pozzi, and Goodhue reviewed the evaluations, which indicated that most employees thought plaintiff was incompetent and unprofessional. On January 21, 2020, plaintiff asked the township information technology (IT) department for access to security footage from the board room, which would reveal who had placed the anonymous evaluations in the designated drop box.

The next day, plaintiff e-mailed the Board a confidential memorandum stating that he had made a report to the DOJ, which had occurred approximately four months earlier. The memorandum stated, in full:

> This is to advise that while employed here, I became aware of non-confidential information relating to a possible crime or crimes involving a current Board member or members. I have reported the non-confidential information to the Federal authorities. I am assuming the Federal authorities are following up appropriately. I am not at liberty to discuss the matter further.

Plaintiff testified that he was referring to Dunn receiving money from Bucci in the memorandum. Plaintiff admitted that Goodhue shared the negative results of his performance evaluations with him before he sent the memorandum to the Board members. The same day plaintiff sent the memorandum, or the day after, Dunn placed plaintiff on paid administrative leave. Plaintiff testified that Dunn told him that he was placed on leave "because of" the memorandum, which she said constituted "insubordination and blackmail." However, Dunn testified that her decision to place plaintiff on paid leave was based on the negative evaluations and plaintiff trying to access the surveillance footage, which she believed he had done in order to identify the employees who had submitted negative evaluations of him.

Dunn and Pozzi retained attorney Dean T. Yeotis to review plaintiff's evaluations and determine whether just cause existed to terminate plaintiff. Yeotis drafted a report based on the evaluation results, and concluded that just cause existed to terminate plaintiff's employment. On February 19, 2020, the Board voted 4-2 that just cause existed to fire plaintiff. Dunn recused herself, and did not vote. But plaintiff remained on paid leave because it was determined that he was entitled to a *Loudermill* hearing before termination.[1]

Plaintiff filed this suit on April 20, 2020; however, the *Loudermill* hearing did not occur until April 29, 2020. After the hearing, the Board voted on whether just cause existed to terminate plaintiff's employment. Dunn recused herself from both the hearing and the vote on plaintiff's continued employment. The Board deadlocked 3-3, which meant the motion to terminate plaintiff's employment failed. As a result of the failed vote, plaintiff returned to his employment on May 11, 2020. At all times that plaintiff was on administrative leave, he received his full pay and benefits, and he received the same pay and benefits after he returned.

A new Township Board was elected and seated in November 2020. Dunn decided to retire, and did not run for reelection. Frank J. Viviano was elected as the new township supervisor. Plaintiff testified that on Viviano's first day, Viviano told him there was no room for general counsel in the new administration, he was directed to go home, and he never returned. Viviano testified that he told plaintiff he was going to dissolve plaintiff's combined position, but that plaintiff could apply for either position once the jobs were separately posted. At the November 24, 2020 board meeting, the Board voted to dissolve the combined position, and plaintiff did not apply for either role once the separate positions were posted. The new board members who testified indicated that they voted in favor of dissolving the dual position based on the potential for conflicts of interest between the jobs of general counsel and HR Director.

Plaintiff's initial complaint alleged violation of the WPA, violation of public policy for reporting violations of the Standards of Conduct for Public Officers and Employees Act, MCL 15.341 *et seq*., and breach of contract. The parties stipulated to allow plaintiff to amend his complaint after his *Loudermill* hearing, so plaintiff's first amended complaint added a claim for "retaliation in violation of Michigan's [WPA]/public policy." After plaintiff's termination, the court allowed plaintiff to amend the complaint again, and the second amended complaint added a count for denial of due process in violation of 42 USC § 1983. This claim was removed to federal district court, which remanded plaintiff's remaining state-law claims to the circuit court.[2]

---

[1] *Cleveland Bd of Ed v Loudermill*, 470 US 532; 105 S Ct 1487; 84 L Ed 2d 494 (1985). A *Loudermill* hearing is a pre-termination hearing for public employees with a property interest in their job. *Id*. at 538-539, 545. The hearing provides the employee an opportunity to respond to allegations. *Id*. at 545-546.

[2] The federal court ultimately granted defendants summary judgment of plaintiff's due-process claim because (1) plaintiff failed to establish that he had a constitutionally-protected property interest in continued employment with the Township, (2) Dunn and Pozzi did not participate in the

The Township moved for partial summary disposition of plaintiff's claims for breach of contract, violation of public policy, and retaliation in violation of the WPA and public policy. Defendants Dunn and Pozzi concurred in the motion. The trial court granted defendants summary disposition of these claims, concluding that plaintiff's employment agreement was void as against public policy, and plaintiff's public policy-based claims were preempted by plaintiff's WPA claim because the WPA provided plaintiff with the exclusive remedy for his termination. Plaintiff moved under MCR 2.604(A) to set aside the order dismissing his breach-of-contract claim.[3] The trial court denied the motion.

Subsequently, each defendant separately moved for summary disposition of plaintiff's last remaining claim under the WPA. Each defendant argued that plaintiff could not establish a prima facie case under the WPA, and even if he could, the legitimate business reasons offered by defendants for the actions taken against plaintiff were not mere pretext. The trial court granted defendants summary disposition of plaintiff's WPA claims. Plaintiff now appeals.

## II. BREACH OF CONTRACT

The trial court did not err by granting summary disposition of plaintiff's breach-of-contract claim, nor did it abuse its discretion by denying plaintiff's motion to set aside this decision, because plaintiff's employment agreement was void as against public policy.

## A. STANDARDS OF REVIEW

The Township initially moved for partial summary disposition of plaintiff's breach-of-contract claim under MCR 2.116(C)(8) and (10). In its opinion and order, the trial court granted summary disposition of plaintiff's breach-of-contract claim under MCR 2.116(C)(10). This Court reviews a trial court's decision to grant or deny summary disposition de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475; 776 NW2d 398 (2009) (quotation marks and citation omitted).

The interpretation of statutes and court rules is reviewed de novo. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 424; 751 NW2d 8 (2008). The goal of statutory interpretation is to

---

decision forming the basis of plaintiff's procedural due-process claim, and (3) Pozzi was entitled to qualified immunity.

[3] This court rule provides, in part, that "an order or other form of decision adjudicating fewer than all the claims, or the rights and liabilities of fewer than all the parties, does not terminate the action as to any of the claims or parties, and the order is subject to revision before entry of final judgment adjudicating all the claims and the rights and liabilities of all the parties." MCR 2.604(A).

ascertain the legislative intent that may be reasonably inferred from the words of the statute, and if the words are clear, it is presumed that the Legislature intended the meaning expressed. *Id*. at 427. A lower court's determination of the public policy of this state is a question of law that is also reviewed de novo. *Ingham Co v Mich Co Rd Comm Self-Ins Pool*, 508 Mich 461, 476; 975 NW2d 826 (2021).

Plaintiff raised the arguments he now raises on appeal in his motion to set aside the court's order. The Township asserts, however, that the trial court's order denying plaintiff's motion to set aside is not before this Court because plaintiff did not raise it in the statement of questions presented section of his brief on appeal or otherwise articulate it as an issue on appeal. It is true that "[i]ndependent issues not raised in the statement of questions presented are not properly presented for appellate review," and need not be reviewed by the Court. *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 404; 628 NW2d 86 (2001). However, "[i]t is generally the case that interlocutory orders are reviewable as of right in conjunction with any appeal of right following entry of a final order." *Attorney General v Mich Pub Serv Comm*, 237 Mich App 27, 39-40; 602 NW2d 207 (1999). Thus, the trial court's decision to deny plaintiff's motion to set aside is reviewed for an abuse of discretion. See *Bowers v VanderMeulen-Bowers*, 278 Mich App 287, 295; 750 NW2d 597 (2008). "A trial court abuses its discretion when it selects an outcome that is not within the range of reasonable and principled outcomes." *Id*.

## B. ANALYSIS

The trial court held that plaintiff's employment contract violated public policy under the reasoning of *Hazel Park v Potter*, 169 Mich App 714, 720; 426 NW2d 789 (1988), because the "just-cause" provision of his employment contract improperly bound successor township boards. Plaintiff asserts the trial court's reliance on *Potter* was error because it is inconsistent with the Supreme Court's earlier ruling in *Davis v Pub Sch of Escanaba*, 175 Mich 105; 140 NW 1001 (1913). We disagree.

In *Potter*, 169 Mich App at 715, the defendant had been employed as city manager of the City of Hazel Park for 13 years when a majority of the city council lost reelection or retired. The outgoing council executed a written employment contract with the defendant indicating that he could only be terminated for just cause. *Id*. at 716. Once the new council was seated, it voted to terminate the defendant's employment. *Id*. at 717. The plaintiff city sought a declaratory judgment that the defendant's contract was invalid. *Id*. The trial court granted summary disposition to the city, ruling that the defendant's contract was void because it infringed on the incoming council's right to appoint a city manager. *Id*. at 717-718. On appeal, this Court found that "[t]he issue of whether an outgoing city council may enter into an employment contract which would bind a future city council is one of first impression in Michigan." *Id*. at 719. After considering the law of other states, this Court determined that the majority rule was that the employment of public officers is a governmental function, and a city council "cannot engage a public officer by contract for a term extending beyond that of its own members, so as to impair the right of their successors to remove such officer and to appoint another in his place." *Id*. at 720 (quotation marks, citations, and emphasis omitted). Thus, this Court held that the defendant's contract with the outgoing council was "void since it deprives the incoming council of its power to select and appoint a city manager as provided in the city charter," and "void on the basis of public policy grounds since it takes away

the governmental or legislative power of the incoming council to appoint and remove public officers." *Id*. at 722-723.

Here, plaintiff's employment contract clearly extended beyond the term of the Board that approved it, as the contract had no termination date, and like the contract in *Potter*, provided that plaintiff could only be terminated for just cause. Under the rule established in *Potter*, plaintiff's contract is void because it deprived the Board of its statutory power to select and appoint a township employee under MCL 41.75a. This statute provides, "The township board may employ a township manager and other employees as are necessary. They shall serve at the pleasure of the township board . . . ." As this Court held in *Potter*, plaintiff's contract was void as a matter of public policy because it had no termination date and it severely limited the new Board's power to appoint a general counsel and HR director of its own choosing due to its just cause termination provision. See *Potter*, 169 Mich App at 722-723.

Plaintiff argues that the trial court erred by relying on *Potter* because it is inconsistent with the Supreme Court's earlier ruling in *Davis*, 175 Mich 105. In *Davis*, *id*. at 106-107, the plaintiff entered a three-year contract with the defendant school board to be superintendent of schools. Under Act 215 of the Public Acts of 1895, § 3347, the school board was given the authority to hire a superintendent. *Davis*, 175 Mich at 106. When the composition of the school board later changed, the new board terminated the plaintiff. *Id*. at 107-108. Plaintiff filed suit, and judgment was entered in favor of the school board upon a determination that the contract was invalid because it extended beyond the term of all members of the school board. *Id*. at 110. On appellate review the Supreme Court considered the "power of boards or officers representing municipal or quasi municipal corporations to make contracts for the services of others for periods beginning or, extending beyond the official lives of such boards or officers, or some of them." *Id*. at 112. The parties in *Davis* agreed that the contract was valid, but disagreed whether its term was for a reasonable time or for the length of the school board members' terms. *Id*. at 115-116. The Supreme Court held that the only limits on the school board's power to employ a superintendent "are those fixed by reasonableness and good faith" because the school board derived its power from the statute. *Id*. at 118. "Within reason and in good faith the powers conferred by the Legislature upon the board should be exercised by the board. There is nothing novel in this doctrine." *Id*. at 119. Thus, the judgment entered in favor of the school board was reversed. *Id*.

The *Potter* decision is binding precedent and analogous to the facts of this case. See *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (this Court is "not *strictly required* to follow uncontradicted opinions from this Court decided before November 1, 1990, but [] they are nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases"), citing MCR 7.215(C)(1); *Straman v Lewis*, 220 Mich App 448, 451; 559 NW2d 405 (1996) (the publication of an opinion of the Court of Appeals creates binding precedent until the Michigan Supreme Court enters a decision altering this Court's decisions or its rationale), citing MCR 7.215(C)(2). There has been no case by the Supreme Court overruling *Potter*, and no case from this Court calling its analysis into question.

The trial court did not err by applying *Potter*, rather than *Davis*. The facts of *Davis* are distinguishable because that case concerned a school superintendent, rather than a township attorney, and the Court's analysis was dependent on a statute that has since been repealed. *Davis*, 175 Mich at 106-107. Furthermore, the only aspect of the contract at issue in *Davis* concerned the

length of the contract, which was three years. *Davis* did not involve a "just cause" termination provision, which is before us in this case, and which made plaintiff's contract indefinite in nature in the absence of just cause. Indeed, the Court in *Davis*, in imposing a reasonableness and good faith limitation on the school board's authority to hire a superintendent, suggested that a contract of 50 years' duration would be set aside as fraudulent. *Id*. at 118. That the Court in *Davis* concluded that the school board had statutory authority to hire a superintendent of schools for a period of 3 years does not *ipso facto* mean that a just cause termination provision in a public employee's employment contract cannot be set aside, even under the reasonableness and good faith standard enunciated in *Davis*. Had plaintiff's contract simply been for a reasonable term of years beyond the life of the Board that initially approved it, the rule set forth in *Davis* might apply here to justify plaintiff's contract. But that is not this case.

Moreover, the Supreme Court has not concluded that *Potter* was wrongly decided or that it is inconsistent with *Davis*, so *Potter* remains good law. See *Straman*, 220 Mich App at 451; see also *Pew v Mich State Univ*, 307 Mich App 328, 334; 859 NW2d 246 (2014) ("Principles of stare decisis require us to reach the same result in a case that presents the same or substantially similar issues as a case that another panel of this Court has decided."). Thus, the trial court did not abuse its discretion by denying plaintiff's motion to set aside its opinion dismissing his breach-of-contract claim based on any alleged failure to follow *Davis*, which is factually distinguishable and relied on a repealed statute, rather than *Potter*, which is more directly analogous to the facts of this case.

Next, plaintiff asserts that under *Terrien v Zwit*, 467 Mich 56; 648 NW2d 602 (2002), the public policy that may serve to void an otherwise valid contract is limited to the state or federal constitution, Michigan statute, or Michigan common law, but the public policy in *Potter* was not grounded in a constitution, statute, or the common law because the Court framed it as an issue of first impression. The Supreme Court, more recently than *Terrien*, has held that contract provisions must yield to public policy, which must be rooted in the state or federal constitution, state statute, or the common law. *Ingham Co*, 508 Mich at 484. It has long been recognized that contracts or any provisions contained within them are void if they are in contravention of public policy. See generally, *Raska v Farm Bureau Mut Ins Co of Mich*, 412 Mich 355, 361-362; 314 NW2d 440 (1982). In *Potter*, the city manager's contract providing for termination for just cause was void as against public policy because it violated the city charter provision indicating that the city manager "shall hold office at the pleasure of the Council." *Potter*, 169 Mich App at 719. While the Court in *Terrien* limited the definition of public policy to policies rooted in the state or federal constitution, state statute, or common law, the Michigan Constitution grants cities the power to adopt and amend a charter. Const 1963, art 7, § 22. Thus, a city's legislative powers are ultimately rooted in the Michigan Constitution. The holding of *Potter* that the defendant city manager's contract was void as against public policy was based on common law and the Michigan Constitution, and does not run afoul of *Terrien* or *Ingham Co*.

Plaintiff next argues that even if *Potter* applies, there is an exception recognized in *Potter* that a contract authorized by statute is exempt from the majority rule that an employment contract that extends past the life of the board is void as against public policy. In *Potter*, 169 Mich App at 721-722, the Court recognized a Florida case, *Tweed v City of Cape Canaveral*, 373 So 2d 408

(Fla App, 1979), which follows this exception.[4] For the exception to apply, the statute must "clearly authorize[] the council to make a contract extending beyond its own term." *Potter*, 169 Mich App at 719, citing 56 Am Jur 2d, Municipal Corporations, § 154, pp 206-208. Plaintiff relies on MCL 41.187, which provides that "[t]he township board of a township may employ an attorney to represent the township in civil matters and in the prosecution of violations of township ordinances." On its face, this does not "clearly authorize" the council to make a contract extending beyond its term. Plaintiff points out that the Florida statute relied on in *Tweed* did not include an explicit provision allowing the contract to extend beyond the terms of the council; however, *Potter* remains good law, *Straman*, 220 Mich App at 451, and this Court must follow the exception as applied in the limited manner provided in *Potter*, rather than as provided in *Tweed*, a nonbinding decision. Thus, because the plain language of MCL 41.187 does not give the Board authority to enter contracts extending beyond the terms of the members, the exception does not apply.

Lastly, plaintiff argues that summary disposition of his breach-of-contract claim was in error because his employment contract was business or proprietary in nature, rather than legislative or governmental, and under *Potter*, a municipal body can bind its successors for business or proprietary contracts. This argument is unavailing. The *Potter* Court determined that the appointment of a city manager was a governmental function. *Id*. at 722-723. Later in the same year that *Potter* was decided, this Court stated that

> where the nature of an office or employment is such as to require a municipal board or officer to exercise a supervisory control over the appointee or employee, together with the power of removal, such employment or contract of employment by the board, it has been held, is in the exercise of a governmental function, and contracts relating thereto must not be extended beyond the life of the board. [*Johnson v Menominee*, 173 Mich App 690, 694; 434 NW2d 211 (1988).]

Plaintiff's employment contract provided that he was to report to the Township Board of Trustees and was "under the general direction of the township Supervisor." It was also within the Board's sole discretion to terminate plaintiff's employment. Plaintiff's contract was legislative or governmental in nature, not business or proprietary, and the majority rule of *Potter* applies to render it void as against public policy.

## III. WHISTLEBLOWERS' PROTECTION ACT

The trial court granted defendants summary disposition of plaintiff's WPA claim under MCR 2.116(C)(10), making our review de novo. *Glasker-Davis*, 333 Mich App at 229. Additionally, the determination of whether the record evidence establishes a prima facie case under the WPA is a question of law that this Court reviews de novo. *Hays v Lutheran Social Servs of Mich*, 300 Mich App 54, 59; 832 NW2d 433 (2013).

---

[4] "Caselaw from sister states and federal courts is not binding precedent but may be relied on for its persuasive value." *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020).

The WPA was enacted in 1981 with the underlying purpose of protection of the public. *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 378-379; 563 NW2d 23 (1997). The WPA protects employees who report a violation or suspected violation of state, local, or federal law. *Whitman v City of Burton*, 493 Mich 303, 312; 831 NW2d 223 (2013). By shielding employees from retaliation, the WPA incentivizes employees to assist law enforcement and make public allegedly corrupt or criminal behavior. *Dolan*, 454 Mich at 378. "Among other things, the WPA makes it illegal for an employer to retaliate against an employee because the employee has reported a violation of the law." *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 396; 572 NW2d 210 (1998). Because the WPA is remedial in nature, courts must construe the statute liberally to effectuate its purpose of protecting whistleblowers. *Id*. at 406.

Plaintiff brought his claim under MCL 15.362 of the WPA, which provides:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

To establish a prima facie case under this section of the WPA, a plaintiff must show that "(1) he or she was engaged in protected activity as defined by the act, (2) he or she suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action." *Whitman*, 493 Mich at 313. The plaintiff may rely on direct or indirect evidence of retaliation to establish a prima facie case under the WPA. *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 17; 891 NW2d 528 (2016). " 'Direct evidence' is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id*. (quotation marks and citation omitted). To prevail on indirect evidence, the plaintiff must present evidence from which "a factfinder could *infer* that the plaintiff was the victim of unlawful retaliation." *Debano-Griffin v Lake Co*, 493 Mich 167, 176; 828 NW2d 634 (2013) (quotation marks, citation, and alteration omitted).

If the plaintiff establishes a prima facie case, there is a presumption of retaliation, which the employer may rebut by offering a legitimate reason for its action. *McNeill-Marks*, 316 Mich App at 17-18. A plaintiff may still avoid summary disposition by showing that a reasonable trier of fact could conclude that the reason offered by the defendant is a mere pretext for unlawful adverse employment action. *Id*. at 18. A plaintiff can establish that a defendant's articulated legitimate reasons are pretext by showing (1) the reasons had no basis in fact, (2) if they do have a basis in fact, they were not the actual factors motivating the decision, or (3) if they were factors, they were jointly insufficient to justify the decision. *Feick v Monroe Co*, 229 Mich App 335, 343; 582 NW2d 207 (1998). "[T]he proofs offered in support of the prima facie case may be sufficient to create a triable issue of fact that the employer's stated reason is a pretext, as long as the evidence would enable a reasonable factfinder to infer that the employer's decision had a discriminatory

[here, retaliatory] basis." *Taylor v Modern Engineering, Inc*, 252 Mich App 655, 661; 653 NW2d 625 (2002) (quotation marks and citation omitted).

## A. THE TOWNSHIP

The trial court did not err by granting summary disposition to the Township of plaintiff's WPA claim based on his November 2020 termination.

" 'Protected activity' under the WPA consists of (1) reporting to a public body a violation of a law, regulation, or rule; (2) being about to report such a violation to a public body; or (3) being asked by a public body to participate in an investigation." *Chandler*, 456 Mich at 399. The plaintiff must show that he made a report, or that he was about to make a report, by clear and convincing evidence. *Id*. at 400. The WPA does not protect employees who discuss reporting a violation without taking further action. *Id*. at 402.

The Township acknowledges that plaintiff engaged in protected activity in October 2019, when he reported potential criminal activity to federal authorities. Plaintiff testified that the day after Dunn told him that she received an envelope of money from Bucci in 2016, plaintiff reported it to the DOJ. The affidavit of Assistant US Attorney Michael Bullota confirmed that plaintiff made this report sometime in 2019. Thus, the first element of plaintiff's WPA claim is met.

For an action by an employer to constitute an "adverse employment action" under the WPA, the plaintiff must demonstrate one of the specific adverse employment actions listed in the statute, *Wurtz v Beecher Metro Dist*, 495 Mich 242, 251 n 14; 848 NW2d 121 (2014), meaning, the employee was discharged, threatened, or otherwise discriminated against regarding his or her compensation, terms, conditions, location, or privileges of employment, MCL 15.362. Plaintiff's argument on appeal relates to the November 2020 vote by the Board to dissolve the dual position and terminate plaintiff's employment. Thus, plaintiff suffered an adverse employment action.

Although plaintiff established the first two elements of his prima facie case, the trial court did not err by granting the Township summary disposition of plaintiff's WPA claim because no questions of fact exist regarding the third element—causation. "Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed." *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003). "Summary disposition for the defendant is appropriate when a plaintiff cannot factually demonstrate a causal link between the protected activity and the adverse employment action." *Id*. at 184. Here, plaintiff distributed his confidential memorandum, which described his October 2019 report to law enforcement, in January 2020. The vote to dissolve the dual position resulting in termination of his employment did not occur until approximately 10 months later, in November 2020, following the election of a new Board. The mere fact that the termination occurred after plaintiff distributed his memorandum is insufficient to establish causation between plaintiff's reporting and his termination. *Id*. at 186. The Board that actually voted to terminate plaintiff was comprised of several new members, and although they knew of plaintiff's memorandum and his reporting, none who were deposed testified that the memorandum had anything to do with their vote. Viviano, the new Township Supervisor, testified that he voted to terminate plaintiff because of actual conflicts of interest inherent in the dual position of general counsel/HR director. During the November board meeting, Viviano expressed that he thought it

-10-

would be in the best interests of the Township to dissolve the dual role because he believed employees were discouraged from bringing their grievances to plaintiff as the HR director because he was simultaneously the legal representative of the Township. Therefore, plaintiff failed to establish causation and thus failed to present a prima facie case of his WPA claim against the Township related to his termination, and summary disposition was proper.

## B. DUNN

Plaintiff also argues the trial court erred by concluding his period of administrative leave did not constitute an adverse employment action by Dunn. We disagree.

Again, to establish a prima facie case under MCL 15.362 of the WPA, the plaintiff must show that "(1) he or she was engaged in protected activity as defined by the act, (2) he or she suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action." *Whitman*, 493 Mich at 313. Plaintiff's report of potential criminal activity to federal authorities constitutes protected activity under the WPA, and satisfies the first requirement. However, plaintiff was not terminated, threatened with termination, or threatened with any other action, and he received his full pay and benefits while on leave. He returned to work in the same position with the same pay and benefits in May 2020. For an action by an employer to constitute an "adverse employment action" under the WPA, the plaintiff must demonstrate he was discharged, threatened, or otherwise discriminated against. MCL 15.362. Being placed on administrative leave with pay does not constitute an adverse employment action under the statute, absent any adverse effect on the compensation, terms, conditions, location, or privileges of employment. Plaintiff claims his work conditions were altered when he returned to work in May 2020. He claims that his old work computer and phone were not returned, his new computer lacked certain programs and access to certain drives, he was told by Dunn that he could not shut his office door, and his township credit card was never returned to him. Dunn also requested that plaintiff have another employee present during any meetings. However, when plaintiff returned to work, he received a new computer and a newer version iPhone, and the programs and drives were eventually installed. He was not given a credit card, but instead given an account number to use. The fact that Dunn requested that another employee be present in plaintiff's meetings does not demonstrate that he was discriminated against in his conditions or privileges of employment. MCL 15.362. Thus, plaintiff fails to establish how any alleged changes in the conditions of his employment upon his return to work in May 2020, constituted adverse employment actions.

Similarly, plaintiff cannot establish that the Board's vote in February 2020, to determine whether just cause existed to terminate his employment, constituted an adverse employment action by Dunn because she recused herself and did not vote, and the vote that did occur did not result in his termination. Plaintiff also cannot establish that Dunn's motion in May 2020, for the Board to reconsider termination, constituted adverse employment action because it did not result in a vote or any further action. Plaintiff has not demonstrated that he was threatened or otherwise

-11-

discriminated against in his compensation, terms, conditions, location, or privileges of employment by the February 2020 vote or Dunn's May 2020 motion.[5]  *Id*.; MCL 15.362.

The only adverse employment action the trial court found to be committed by Dunn was her "development, use, and review of the anonymous performance evaluation questionnaires that were sent to union members and managers who were allegedly antagonistic towards [plaintiff]." This led to the hiring of an "alleged pro-union attorney" to review the evaluations and make recommendations to the Board on whether just cause existed for termination, which the trial court deemed not to be an adverse action.  Plaintiff cannot establish a causal link between his protected activity, making the report to federal authorities, and the adverse employment action, the performance evaluations.  Plaintiff concedes a lack of a causal relationship between his January 22, 2020 memorandum and any alleged adverse employment action taken before that date.  Dunn sent out the performance evaluations on January 10, 2020, asking that they be returned by January 17, 2020.  Dunn, Pozzi, and Goodhue reviewed the evaluations sometime after January 17, 2020, but before plaintiff sent his memorandum on January 22, 2020, and plaintiff ultimately conceded that Goodhue reviewed the negative results of his evaluations with him before he sent his memorandum.  Thus, there is no causal connection between the performance evaluations and plaintiff's protected activity because Dunn's development, use, and review of the evaluations occurred before plaintiff sent out his memorandum.

The trial court determined that Dunn's retention of attorney Yeotis to review the evaluations did not constitute an "adverse employment action" under the WPA.  We agree. Plaintiff cannot establish a causal connection between his protected activity and the hiring of Yeotis.  Although Dunn and Pozzi retained Yeotis after plaintiff sent out his memorandum, there is nothing more than a temporal relationship between the two occurrences, and this is insufficient to establish the third element of plaintiff's prima facie case.  See *West*, 469 Mich at 186.  Dunn and Pozzi retained Yeotis upon the recommendation of attorney Meihn, the interim general counsel retained while plaintiff was on administrative leave, based on the negative results of plaintiff's performance evaluations.   They hired Yeotis to review the evaluations, and provide a recommendation to the Board whether just cause existed to terminate plaintiff.  Thus, plaintiff has failed to establish causation between his memorandum and the hiring of Yeotis.

Because plaintiff has failed to establish a prima facie case against Dunn under the WPA, there is no presumption of retaliation, no need for Dunn to offer legitimate reasons for her actions, and no reason to discuss plaintiff's argument that any reason offered by Dunn is mere pretext. *McNeill-Marks*, 316 Mich App at 17-18.

## C.  POZZI

Lastly, the trial court did not err by granting Pozzi summary disposition of plaintiff's WPA claim.

---

[5] To the extent that defendant argues that Pozzi's participation in the February 2020 vote or seconding Dunn's May 2020 motion constitute adverse employment action, his argument fails for the same reasoning.

As an initial matter, the trial court properly granted Pozzi summary disposition based on its conclusion that she was not an "employer" or an "agent of an employer" for purposes of the WPA. MCL 15.361(b) defines "employer" as "a person who has 1 or more employees. Employer includes an agent of an employer and the state or a political subdivision of the state." The Township was the "employer" of plaintiff under his employment agreement; Pozzi merely signed it on the Township's behalf in her capacity as clerk. It was also signed by Dunn in her capacity as supervisor. This Court has used the "economic-reality" test to determine whether an employer-employee relationship exists under the WPA:

> The economic reality test looks to the totality of the circumstances surrounding the work performed. Relevant factors to consider under the test include: (1) control of a worker's duties; (2) payment of wages; (3) right to hire, fire, and discipline; and (4) performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal. All the factors are viewed as a whole and no single factor is controlling. [*Chilingirian v City of Fraser*, 194 Mich App 65, 69-70; 486 NW2d 347 (1992), remanded on other grounds 442 Mich 874 (1993) (citations omitted).]

Dunn supervised plaintiff's work duties, as provided in his employment agreement. There was no indication that Pozzi had any control over the payment of plaintiff's wages, nor did Pozzi have the authority to hire, fire, or discipline plaintiff; these decisions were left to the discretion of the Board.

Plaintiff argues Pozzi was an "agent of an employer" under the statute. MCL 15.361(b). Claims under the WPA are often compared by analogy to claims under the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*. In *Elezovic v Bennett*, 274 Mich App 1, 10; 731 NW2d 452 (2007), this Court held that one becomes an "agent" for purposes of the ELCRA through "delegation of general supervisory power and authority." "Specifically, persons to whom an employing entity delegates supervisory power and authority to act on its behalf are agents, as distinguished from coemployees, subordinates, or coworkers who do not have supervisory powers or authority, for purposes of the [ELCRA]." *Id*. at 10 (alteration in original). Here, the trial court correctly concluded that under this framework, Pozzi is not an agent of an employer for purposes of the WPA because she had no general supervisory power or authority over plaintiff. His day-to-day job duties were supervised by Dunn, as the township supervisor. Therefore, summary disposition in favor of Pozzi on plaintiff's WPA claim against her was proper on this basis.

## IV. PUBLIC POLICY

Plaintiff asserts the trial court erred in finding the WPA provided the exclusive remedy for his retaliation claims. Plaintiff argued that his termination in retaliation for reporting violations of the Standards of Conduct for Public Officers and Employees Act violated public policy. Plaintiff also argued he was retaliated against for filing his original WPA claim, in contravention of public policy. We disagree.

The Township first moved for partial summary disposition under MCR 2.116(C)(8) and (10). The trial court's opinion and order indicates that it granted the Township summary disposition of plaintiff's claims for violation of public policy and retaliation in violation of the WPA and public policy under MCR 2.116(C)(8). This Court reviews a trial court's decision to

-13-

grant or deny summary disposition de novo. *Glasker-Davis*, 333 Mich App at 229. A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition under MCR 2.116(C)(8) is warranted only when the claim is so unenforceable as a matter of law that no factual development could justify recovery. *Id*. at 160. When reviewing a motion brought under MCR 2.116(C)(8), this Court must consider the motion based on the pleadings alone, and accept all factual allegations as true. *Id*.

"The WPA provides the exclusive remedy for [] retaliatory discharge and consequently preempts common-law public-policy claims arising from the same activity." *Anzaldua v Neogen Corp*, 292 Mich App 626, 631; 808 NW2d 804 (2011). In *Janetsky v Saginaw Co*, 510 Mich 1104, 1104 & n 1 (2022) (*Janetsky I*), the Supreme Court ruled that this Court erred by concluding that the WPA provided the exclusive remedy for the plaintiff's public-policy claim, and remanded for a determination whether this claim was legally and factually supported. The Supreme Court determined that the WPA did not provide the exclusive remedy for the plaintiff's public-policy claim because that claim was "factually distinct" from her WPA claim, and the factual allegations did not "fall within the scope of conduct covered by the WPA." *Id*. at 1105. The Court concluded:

> [The] [p]laintiff's WPA claim is based on her reports to her supervisor of actual or suspected violations of the law in the entering of a plea and sentencing agreement. By contrast, [the] plaintiff's public-policy claim is based on her alleged refusal to violate the law—i.e., her attempt to set aside that plea and sentencing agreement. Further, the WPA governs only *reports* of violations or suspected violations of the law, and [the] plaintiff's public-policy claim is not premised on such conduct. [*Id*. at 1105-1106].

This case is distinguishable from *Janetsky* because plaintiff's public-policy claims are not "factually distinct" from his WPA claim. *Id*. at 1105. In plaintiff's second amended complaint, he alleged "violation of Michigan public policy" in Count II, and "retaliation in violation of Michigan's [WPA]/public policy" in Count IV. Both counts referenced and relied on the same general allegations, which plaintiff also relied on for his WPA claim in Count I. Although Count IV was amended to include allegations related to activity that occurred after plaintiff filed his original complaint, plaintiff relied on the same general factual allegations for all three counts. In Count II, he alleged he was retaliated against for making his report to federal authorities. He makes the same allegations under Count IV. This was the underlying basis for his WPA claim in Count I. Based on the pleadings alone, it is clear that plaintiff's public-policy claims arise from the same activity as his WPA claim, namely, his report of suspected criminal activity to federal authorities and defendants' alleged retaliatory acts in response. Because the WPA provides the exclusive remedy for alleged retaliatory discharge, summary disposition of plaintiff's public policy-based claims was proper under MCR 2.116(C)(8). *Anzaldua*, 292 Mich App at 631.

Plaintiff also argues that his public-policy claims should have been reinstated when the trial court granted defendants summary disposition of his WPA claims. The trial court's opinion and order provided, "[s]hould [p]laintiff's WPA claim prove not applicable, the [c]ourt will entertain a motion to reinstate these claims." But the trial court did not find that plaintiff's WPA claims were "not applicable"; rather, it ultimately concluded that the WPA did apply, but plaintiff's

-14-

claims failed on the merits. Moreover, plaintiff never moved to reinstate these claims in the trial court.

## VI. CONCLUSION

The trial court did not err in granting defendants summary disposition of plaintiff's breach-of-contract, WPA, and public policy-based claims. The trial court orders granting these motions and denying plaintiff's motion under MCR 2.604(A) are therefore affirmed.

Affirmed.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Christopher P. Yates